IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-09-00066-CV

 

In
re Royalco Oil & Gas Corporation

 

 



Original Proceeding

 

 



Opinion



 

            Royalco Oil & Gas
Corporation seeks a writ of mandamus compelling Respondent, the Honorable Wayne
Bridewell, Judge of the 249th District Court of Johnson County, to vacate his
order granting Stockhome Trading Corporation’s motion to transfer venue of the
underlying suit to a district court in Tarrant County.  We will deny Royalco’s
petition.

            The parties’ dispute arises
from a salt water disposal lease agreement for a well to be located on
“approximately thirteen (13) acres of land” situated in Johnson County.  The lease was executed by Stockhome in favor of Triad Rovan Services, LP.  Paragraph
10.8 of the lease fixes venue in Tarrant County for any litigation related to
the lease.

            Two months after signing the
lease, Triad conveyed fifty percent of its interest to Royalco by a services
agreement.  A dispute later arose between Stockhome and Triad, and Stockhome
evicted Triad from the property by a forcible detainer action.  Stockhome then
filed suit in Tarrant County seeking a declaration of rights under the lease. 
As a result of the eviction, Royalco was also locked out from the property. 
Royalco filed suit in Johnson County to protect its rights under the lease.[1]

            Respondent granted
Stockhome’s motion to transfer venue of the Royalco suit from Johnson County to Tarrant County pursuant to the venue provision in paragraph 10.8 of the
lease.

            The issue in this proceeding
is whether venue is governed by section 15.0115 of the Civil Practice and
Remedies Code, which fixes venue for landlord-tenant disputes “in the county in
which all or a part of the real property is located,” or section 15.020, which
provides that venue shall be in the county agreed to by the parties in a “major
transaction.”  See Tex. Civ.
Prac. & Rem. Code Ann. § 15.0115(a) (Vernon 2002), § 15.020(b) (Vernon Supp. 2008).[2] 
Resolution of this issue rests on whether the lease constitutes a “major
transaction,” which is defined by section 15.020(a) as:

a transaction evidenced by a written
agreement under which a person pays or receives, or is obligated to pay or
entitled to receive, consideration with an aggregate stated value equal to or
greater than $1 million.  The term does not include a transaction entered into
primarily for personal, family, or household purposes, or to settle a personal
injury or wrongful death claim, without regard to the aggregate value.

 

Id. § 15.020(a) (Vernon Supp. 2008).

            Paragraph 1.3(a) of the
lease provides that it has a 99-year term.  The stated consideration is found
in paragraph 3.1 and consists of monthly rent payments of $20,000[3]
or a “percentage rent” based on a stated fee per barrel of disposed or
processed water once the well is in operation.[4] 
The lessee is considered in default if it: (1) fails to pay the monthly rent
within fifteen days after written notice of nonpayment from Stockhome; or (2)
fails to comply with “the other terms, covenants, agreements or conditions
contained in this Lease.”  Upon the lessee’s default, Stockhome may either
terminate the lessee’s right to possession of the premises or elect not to
terminate the right to possession and “continue to enforce all its rights and
remedies specifically set forth in this Lease, including the right to collect
Monthly Rent as it becomes due.”  Stockhome may not, however, accelerate
monthly rent.

            The lessee also has a right
to terminate the lease set out in paragraph 1.3(a) which provides in pertinent
part, “Lessee may terminate this Lease at any time by giving written notice to
Lessor.”

            Royalco acknowledges that
the lease has a 99-year term but argues that this is not the true test for determining
the aggregate stated value of the consideration.  Rather, Royalco contends that,
because the lease “is subject to termination at will by the Lessee(s)” and
because Stockhome contractually waived its right to accelerate monthly rents in
the event of default by the lessee, the aggregate stated value is no more than $20,000
per month.

            In other words, Royalco
argues that the lease created a periodic tenancy.  We disagree.  “Periodic
tenancies are those where the agreement provides no fixed term, but is
for period to period at the will of the lessor or the lessee.”  Panola County Appraisal Review Bd. v. Pepper, 936 S.W.2d 10, 12 (Tex. App.—Texarkana 1996, no writ) (emphasis added) (citing 49 Am. Jur. 2d Landlord and Tenant § 130 (1995)).  The Dallas Court has rejected a similar contention, holding among other things that a 180-month
lease which gave both parties the contractual right to cancel the lease at any
time with notice did not create a “month-to-month tenancy.”  See Pedigo’s
Groceries, Inc. v. Mr. M Corp., 633 S.W.2d 353, 353-54 (Tex. App.—Dallas
1982, no writ).  “The existence in either landlord or tenant of a right to
cancel the lease does not deprive it of the certainty necessary to support a
fixed term.”  1 Milton R. Friedman, Friedman on Leases § 4:1,
at 4-4 (Patrick A. Randolph, Jr., ed., 5th ed. June 2006).

            Instead, we hold that,
because the lease at issue provides for a fixed term of 99 years, the lease
created a tenancy for years.  See Willis v. Thomas, 9 S.W.2d 423, 424-25
(Tex. Civ. App.—San Antonio 1928, writ dism’d); Restatement of Property § 19 cmt. c (1936) (“An estate for
years can be created subject to a special limitation, a condition subsequent,
an executory limitation or a combination of these restrictions.”)
(parentheticals omitted); 2 Richard R.
Powell, Powell on Real Property § 16.03[4][b] (Michael Allan Wolf, ed., June
2003) (“a term of years lease that specifies a calendar ending but that
provides for earlier defeasibility by special limitation, condition subsequent
or executory interest is valid”).

            The lease has a 99-year term
and requires monthly rental payments of $20,000.  Thus, the lease would require
the payment of $1 million in rentals in less than five years.  Accordingly, the
lease constitutes a “major transaction” for purposes of section 15.020 because
it provides for the payment of “consideration with an aggregate stated value”
of more than $1 million.  See Tex.
Civ. Prac. & Rem. Code Ann. § 15.020(a); cf. In re Tex. Ass’n of Sch. Bds., Inc., 169 S.W.3d 653, 659 (Tex. 2005) (orig. proceeding)
(aggregate stated value of consideration for 1-year insurance contract with
annual premium of $41,973 was amount of annual premium even though contract
provided for coverage of more than $17 million).

Because the lease constitutes a major
transaction, mandatory venue lies in Tarrant County under the terms of the contract. 
See Tex. Civ. Prac. & Rem.
Code Ann. § 15.020(b).  Royalco’s petition is denied.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Petition denied

Opinion
delivered and filed June 3, 2009

[OT06]








 









[1]
              Royalco did not
receive notice of the Tarrant County lawsuit until about 2 weeks after filing
suit in Johnson County.

 





[2]
              Section 15.0115 and
section 15.020 are both mandatory venue provisions.  However, section 15.020(c)
provides in pertinent part that, when applicable, section 15.020 controls over
other venue statutes in title 2 of the Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 15.020(c) (Vernon Supp. 2008).





[3]
              The lease provided
for lower monthly rentals during the first 6 months of the lease term, but
since February 2008 the monthly rent has been $20,000.

 





[4]
              Apparently, the well
is not yet operational.